**EXHIBIT A**

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

       Plaintiff,

  vs.                No. 14-cv-05864

CITY COLLEGE OF CHICAGO     Judge Sara Ellis
d/b/a HAROLD WASHINGTON
COLLEGE,               Magistrate Judge
                    Susan Cox

       Defendant.

      The deposition of WILLARD A. MOODY,
called for examination pursuant to the Rules of
Civil Procedure for the United States District
Courts pertaining to the taking of depositions,
taken before CHERYL L. SANDECKI, Certified
Shorthand Reporter for the State of Illinois, at
500 West Madison Street, Chicago, Illinois, on
January 13, 2016, at the hour of 9:30 a.m.

REPORTED BY:  CHERYL L. SANDECKI, CSR, RPR
LICENSE NO.:  084-03710
JOB NO.: 8986

Thompson Court Reporters, Inc
(312) 421-3377

1    some full-time teaching jobs.   And I don't know

2    whether I recommended she apply for one, but I

3    informed her.

4         Q.   Okay.   Do you know why you informed

5    Ms. Ortiz that there was a full-time teaching

6    job?

7         A.   Because of what Matt Usner said about

8    her.

9         Q.   But you don't recall interviewing her?

10   Do you recall seeing a teaching demonstration by

11   her?

12        A.   Not this time; but I had seen her

13   before.

14        Q.   Okay.   All right.   When did you see a

15   teaching demonstration from Ms. Ortiz?

16        A.   I do not remember; but I know that I

17   saw her before.

18        Q.   Okay.   And what do you recall about the

19   teaching demonstration that you saw?

20        A.   That she was inexperienced.   And that

21   when she spoke, she had a few grammatical

22   problems.   It might have been pronunciation

23   problems.   But I think they were grammatical

24   problems.   And she did not make it past the

Thompson Court Reporters, Inc
(312) 421-3377

Page 60

1    interview stage.  She was not recommended for a

2    teaching demonstration, I don't think.  And I

3    remember people saying that she is a little

4    green, she needs some more experience and maybe

5    she would be better in the future.

6        Q.    Just so I'm clear --

7        A.    So I remember that.

8        Q.    So you did interview her?

9        A.    Yes, but not this time in 2011.

10       Q.    Okay.

11       A.    But before.

12       Q.    Okay.  And how long before do you

13   believe that you may have interviewed her?

14       A.    I don't remember.

15       Q.    Could it have been in the spring of

16   2011?

17       A.    I don't remember when it was.  I don't

18   remember whether it was close to this

19   opportunity or whether it was several semesters

20   away.

21       Q.    And do you remember that she seemed

22   inexperienced to you?

23       A.    Yes.

24       Q.    What gave you that impression?

1      A.    I think some grammatical mistakes that

2  she was making when she spoke.  But I don't

3  remember what they were.

4      Q.    Was there anything else that you recall

5  about her interview?

6      A.    No.

7      Q.    And were you personally in favor of her

8  bringing -- bringing her in for a teaching

9  demonstration?

10     A.    This next time in 2011?

11     Q.    After her first interview?

12     A.    I don't remember.

13     Q.    And you said she was not brought back

14 for a teaching demonstration?

15     A.    No.  You are asking me about the

16 teaching demonstration?  I thought you were

17 asking me about the interview.  I don't

18 remember; but I think I might have said no.

19 Yeah, I don't remember.

20     Q.    Now, at some point after this first

21 interview, did you see Ms. Ortiz again for an

22 interview?

23     A.    I don't remember interviewing her or

24 seeing her teaching demonstration.  All I have

Page 62

1      is this, that I told her there would be some

2      full-time jobs in the spring or whatever.  And

3      she said she was interested.

4          Q.    But you may have been present for a

5      second interview?

6          A.    May.

7          Q.    And you may have been present for a

8      second teaching demonstration?

9          A.    May have been.

10         Q.    Do you recall ever interviewing

11     Christopher Thomas?

12         A.    Yes.

13         Q.    How many times did you interview

14     Mr. Thomas?

15         A.    Just once.

16         Q.    Do you recall when you interviewed

17     Mr. Thomas?

18         A.    At the same time that these other

19     interviews were going on.  What's this fall

20     2011?  Fall 2011.

21                      (Whereupon, Moody Deposition

22                       Exhibit 4 was marked for

23                       identification.)

24

1      Q.    Is that in the e-mails you produced

2  here?

3      A.    I don't think so.

4      Q.    Okay.  But you remember seeing such an

5  e-mail?

6      A.    Uh-huh, yes.

7      Q.    All right.  Now, in the fall of 2011

8  interview sequence, did you take notes on all

9  the candidates that you saw?

10     A.    Yes.

11     Q.    And all those notes you placed in a

12  file box in your office?

13     A.    Uh-huh.

14     Q.    And other than the notes for Nancy

15  Sullivan, have they all been shredded?

16     A.    They all were shredded.  I didn't keep

17  these notes for Nancy Sullivan.  In a previous

18  semester, and I don't remember when, Larnell

19  Dunkley was being deposed and he was the chair

20  at the time.

21          And I don't think that he had any notes

22  for these candidates, and, you know, he was --

23  you know, this lawsuit I think was progressing.

24  So he asked me if I had any notes about Nancy

**EXHIBIT B**

information. We are requesting until January 4, 2013 to provide the requested information. Thank you.

George

**From:** GRACE SWIERCZEK [mailto:GRACE.SWIERCZEK@EEOC.GOV]
**Sent:** Monday, December 17, 2012 11:00 AM
**To:** George Thomson <gthomson@ccc.edu>
**Subject:** Nancy Sullivan v. City Colleges of Chicago 440-2012-05800

Mr. Thomson,

In order for the Commission to continue the investigation of the above captured charge, the following information is needed:

1. A copy of the Full Time faculty position in the English department of HWC in the Fall of 2011.

2. The name, race, age and a copy of resume of the successful candidate that was selected for the Full Time faculty position in the English department filled in December 2011.

3. Copies of all notes and/or scoring sheets taken by the department interviewers during the interviews for the Charging Party and the candidate that was selected for the Full Time faculty position in the English department.

4. The name(s), race, age, position title of all the department interviewers.

5. Current make up of all the Full Time faculty members in the English department of HWC(include names, race, age, and position title).

Please submit the above information no later than December 31, 2012.

Thank you.

*Grace Swierczek*
*Federal Investigator*
*U.S Equal Employment Opportunity Commission*
*500 West Madison St., Suite 2000*
*Chicago, IL 60661*
*Phone (312) 869-8144*
*Fax (312) 869-8220*
*grace.swierczek@eeoc.gov*

**EXHIBIT C**

EEOC FORM 131 (11/09)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| CITY COLLEGES OF CHICAGO<br>Chief Executive Officer<br>226 W. Jackson<br>Chicago, IL 60606 | **Nancy Sullivan** |

**THIS PERSON** (check one or both)

| X | Claims To Be Aggrieved |
|---|---|
| | Is Filing on Behalf of Other(s) |

EEOC CHARGE NO.

**440-2012-05800**

### NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

| X | Title VII of the Civil Rights Act (Title VII) | | The Equal Pay Act (EPA) | | The Americans with Disabilities Act (ADA) |
|---|---|---|---|---|---|

| X | The Age Discrimination in Employment Act (ADEA) | | The Genetic Information Nondiscrimination Act (GINA) |
|---|---|---|---|

The boxes checked below apply to our handling of this charge:

1. ☐ No action is required by you at this time.

2. ☐ Please call the EEOC Representative listed below concerning the further handling of this charge.

3. ☒ Please provide by **29-OCT-12** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. ☐ Please respond fully by to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. ☐ EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by to

   If you **DO NOT** wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

Grace Swierczek,
Investigator

*EEOC Representative*

Telephone    **(312) 869-8144**

**Chicago District Office
500 West Madison St
Suite 2000
Chicago, IL 60661
Fax: (312) 869-8220**

Enclosure(s):   ☒ Copy of Charge

### CIRCUMSTANCES OF ALLEGED DISCRIMINATION

| X | Race | | Color | | Sex | | Religion | | National Origin | X | Age | | Disability | | Retaliation | | Genetic Information | | Other |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| **September 28, 2012** | **John P. Rowe,<br>District Director** | |

**E000055**

**EXHIBIT D**

IN THE UNITED STATES
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

NANCY SULLIVAN,            )
                                  )
         Complainant,      )
                                    )
and                           )      Charge No. 440-2012-05800
                                    )
CITY COLLEGES OF CHICAGO,    )
                                    )
         Respondent.       )

## RESPONDENT'S STATEMENT OF POSITION

NOW COMES the Board of Trustees, Illinois Community College District No. 508, also known as "City Colleges of Chicago," ("CCC") by its General Counsel, James Reilly, and through its Senior Staff Attorney, George Thomson, submits the following Statement of Position in response with the above-captioned charge:

## STATEMENT OF FACTS

In August 2006, Nancy Sullivan ("Complainant") was hired by Harold Washington College ("HWC"), one of the City Colleges of Chicago, as an Adjunct Instructor in the English department, a part-time position in which she is currently employed. Complainant teaches lower level English courses primarily. Complainant is a member of the City Colleges Contingent Labor Organizing Committee, IEA-NEA ("CCCLOC" or "Union").

CCC (Respondent") is a community college district formed under and governed by Illinois' Public Community Colleges Act (the "PCCA"), 110 ILCS 805/1-1 *et seq.* CCC is governed by its Board of Trustees ("the Board"). The PCCA grants the Board authority to employ such personnel as may be needed, to establish policies governing their employment, and to fix the amount of their compensation. 110 ILCS 805/3-42.

Since being hired by Respondent in 2006, Complainant has had the title of Adjunct Instructor. In that position, she may teach no more than 12 credit hours per semester pursuant to the terms of the Collective Bargaining Agreement with the Union ("CBA"). The CBA also provides no preference for the hiring of current Adjunct Instructors into Full-time faculty positions, other than that CCC must interview at least two Adjunct Instructors who have applied for and meet the minimum qualifications for hire.

## ARGUMENT

In her charge, Complainant alleges that she has been discriminated against on the basis of her race and age. Complainant asserts that she applied for a Full-time faculty position in the English Department at HWC in or around December 2011 and that another candidate was selected for the position. Complainant asserts further that the selection of the successful candidate was motivated by race and age discrimination. Complainant offers no direct evidence of discrimination in her charge—in fact, she does not even identify the successful candidate.

Complainant applied for a full-time faculty position in the English department of HWC in the Fall of 2011. As a result of the screening process, Complainant and others were selected for an initial interview with members of the English department. Complainant's highest/terminal degree is a Master's Degree in Mass Commincation/Journalism. The department interviewers had concerns about recommending a candidate whose degree credentials did not match the educational requirements stated in the job posting.[1] After the initial interview, the department interview panel also had concerns that Complainant's primary teaching experience had

---

[1] In fact the two successful candidates who were hired for the two positions which were filled each have Master's Degrees in English and English Literature.

been at the developmental level which raised issues about Complainant's preparedness to teach upper level composition courses.

Despite these concerns, Complainant was invited for a second interview with the department interview panel during which candidates are required to present a lesson as a demonstration. Complainant's teaching presentation raised further concerns. Complainant's demonstration teaching lesson addressed lower level skills (proofreading and editing), rather than the skills involved with teaching upper level composition courses. According to the interview panel, Complainant's presentation also did not incorporate active learning strategies for teaching. Finally, Complainant often did not follow the guidelines outlined in the teaching demonstration instructions which were provided to the candidates.

As a result of the above, Complainant was not selected for further interviews for the Full-time faculty position in the English department which HWC filled in December 2011.

## POSITION

Complainant's September 28, 2012 Charge of Discrimination is wholly unsupported. While Complainant alleges that she applied for a promotion for which she was not selected, there is no evidence that her race or her age played any decision in Respondent's selection process for the Full-time faculty position in the English Department of HWC in December 2011. Complainant participated in two interviews for the position. Due to concerns about (1) her fulfillment of degree credentials not matching those stated in the job posting, (2) her preparedness to teach upper level composition courses, and (3) her demonstration teaching presentation, Complainant was not selected for further interviews by Respondent's administration.

3

## CONCLUSION

WHEREFORE, Respondent respectfully requests that the EEOC dismiss this charge of discrimination in its entirety.

Respectfully submitted,

George Thomson
Senior Staff Attorney

City Colleges of Chicago
Office of the General Counsel
226 West Jackson Boulevard, 14th Floor
Chicago, IL 60606
312/553-2772

4

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he caused this Respondent's Statement of Position to be served upon Grace Swierczek, U.S. Equal Employment Opportunity Commission, Chicago District Office, 500 W. Madison St., Suite 2000, Chicago 60661, by enclosing true and correct copies thereof in a properly addressed, postage pre-paid envelope which was deposited in the United States mail at 226 West Jackson Boulevard, Chicago, Illinois on October 23, 2012 before 5:00 p. m.

George Thomson

**EXHIBIT E**

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION


| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, | ) | |
| Plaintiff, | ) | Civil Action |
| v. | ) | No. 1:14-CV-05864 |
| CITY COLLEGES OF | ) | |
| CHICAGO D/B/A HAROLD | ) | |
| WASHINGTON COLLEGE, | ) | |
| Defendant. | ) | |
| _____ | ) | |


The deposition of JENNIFER I.
MERESMAN, called by the Plaintiff for
examination, pursuant to notice and pursuant to
the Federal Rules of Civil Procedure for the
United States District Courts pertaining to the
taking of depositions, taken before Cynthia J.
Conforti, Certified Shorthand Reporter, at
Suite 2000, 500 West Madison Avenue, Chicago,
Illinois, commencing at the hour of 9:30 a.m.
on the 21st day of September, A.D., 2015.

1       Q.     Which ones, do you know?

2       **A.**     **I'm positive that Willard Moody**

3  **did.**

4       Q.     And how are you positive?

5       **A.**     **Because I've seen his notes, and**

6  **he's known for that, big handwriting, and he's**

7  **good with that.**

8       Q.     So any other committee members

9  you're aware of that took notes?

10      **A.**     **I do not know.  I assume that most**

11  **people took notes, but I do not know for sure.**

12      Q.     Okay.  And during or after the

13  teaching demonstration, during the teaching

14  demonstration, did you take notes?

15      **A.**     **I assume that I did.**

16      Q.     And did you also keep some of

17  those in a file?

18      **A.**     **I don't know.  I was not able to**

19  **find those when I looked in the one file that I**

20  **did have.**

21      Q.     Okay.  Did you fill out any sort

22  of rating sheet or rubric of the teaching

23  demonstration?

24      **A.**     **I don't recall.**

**EXHIBIT F**

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT | ) | |
| OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 14-CV-05864 |
| | ) | |
| CITY COLLEGES OF CHICAGO, | ) | |
| D/b/a HAROLD WASHINGTON | ) | |
| COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |

The deposition of LARNELL DUNKLEY,
called by the Plaintiff for examination, taken
pursuant to the Federal Rules of Civil
Procedure of the United States District Courts
pertaining to the taking of depositions before
MAUREEN A. WOODMAN, a notary public within and
for the County of Cook and State of Illinois,
at Suite 2000, 500 West Madison Street,
Chicago, Illinois, on the 15th day of
September, 2015, at the hour of 9:30 o'clock
a.m.

1    see if anyone was around.

2        Q.   Who was present for Cidney Topping's

3    demonstration?

4        A.   I believe all of us were.

5        Q.   And Maria Ortiz?

6        A.   The same, the whole committee.

7        Q.   What do you remember about Chris

8    Thomas' demonstration?

9        A.   I remember -- because I've used some

10   of his techniques in my own class.  I remember

11   him walking -- when I say walking around the

12   room, he would pretend that we were students.

13   He gave us an exercise on -- it had something

14   to do with a paragraph.  I remember it had

15   something to do with the paragraph.  I remember

16   a paragraph being projected on the screen, and

17   he illustrated the parts of the paragraph.  It

18   was very visual, because it's very difficult

19   for students to understand how to write a

20   paragraph that has a beginning, middle and end

21   and all makes sense.  He might have equated it

22   to food, like a hamburger bun or something.

23   But I remember the paragraph was on the screen,

24   it was visual, he walked around the room and

**EXHIBIT G**

Page 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

U.S. EQUAL EMPLOYMENT          )
OPPORTUNITY COMMISSION,        )
                               )
          Plaintiff,           )
                               ) No. 14-CV-05864
     vs.                       )
                               )
CITY COLLEGES OF CHICAGO d/b/a )
HAROLD WASHINGTON COLLEGE,     )
                               )
          Defendant..          )

          The deposition of MARIA DE JESUS ESTRADA,

called by the Plaintiff for examination taken

pursuant to the Federal Rules of Civil Procedure of

the United States District Courts pertaining to the

taking of depositions, taken before Valerie Calabria,

CSR, RPR, a notary public within and for the County

of Cook and State of Illinois, taken at 500 West

Madison Street, Suite 2000, Chicago, Illinois, on

September 18, 2015, at 9:40 a.m.

Reported By:  Valerie M. Calabria, CSR, RPR

Page 43

1      A.      It varies from committee member to

2   committee member.

3      Q.      Well, do you take notes?

4      A.      I take notes, right.

5      Q.      What do you do with those notes after?

6      A.      Usually, we hand them over to Moody or

7   Larnell.

8      Q.      So you take handwritten notes?

9      A.      Handwritten notes, sometimes typed, but,

10  yeah, mostly handwritten for me.

11     Q.      And after the interview process at the

12  department level, how do you decide who will move

13  on to the teaching demonstration?

14     A.      We discuss and rank.

15     Q.      Is there a specific number of candidates

16  you like to move from the interview stage to the

17  teaching demonstration stage?

18     A.      An ideal number?  Ideally, we like to

19  move all of them, but that never happens.  I think

20  we aim for -- there's not a set amount because it's

21  hard to say how many candidates are going to be

22  qualified.  So we try to send the candidates that

23  we can.

24     Q.      What is the process of the teaching

1     A.    I recall that Moody was there, and I

2  believe Larnell was there.  And I want to say

3  LaRhue Finney was there, but that's all I remember.

4     Q.    Did you take notes for the teaching

5  demonstration?

6     A.    I did.

7     Q.    What did you do with those notes?

8     A.    I gave them to Moody, I believe.  Moody

9  or Larnell, one of those two.

10     Q.    You mentioned that you expected

11  different energy.

12     A.    Yeah, because Nancy really wanted that

13  job, and I wanted that to shine through in her

14  teaching demonstration.  Even though I've never

15  seen her teach, I thought she was capable of so

16  much more, you know.  But, you know, you have to

17  evaluate the performance that's before you.  And I

18  just think she could have done better and I

19  expected her to do better than the previous time,

20  right, and I didn't see the growth that you would

21  have expected from a candidate coming in again for

22  a second interview or a teaching demonstration,

23  especially since she teaches there, I mean, at

24  Harold Washington, you know.

1  to Nancy Sullivan's hiring?

2          **A.     During the hiring process?**

3          Q.     At any time did you ever check to see if

4  there's any documents in there?

5          **A.     I checked.**

6          Q.     Did you ever use applicant reading

7  sheets in the hiring process?

8          **A.     I believe we did, but I don't have**

9  **copies of those sheets.**

10          Q.     Was it your practice to fill those out

11  for interviews?

12          **A.     Yes.**  ~~We filled them out and took notes,~~

13  ~~took notes, but those went to Larnell or Moody.~~

14          Q.     Are you familiar with the credential

15  guidelines at City Colleges?

16          **A.     I understand that currently in order to**

17  **teach a class you have to have 15 graduate credits,**

18  **and that's all I know because that's all they tell**

19  **us.**

20          Q.     Is that something that you have reviewed

21  in the past?

22          **A.     Only insofar as they have denied my**

23  **union members to teach courses when they had**

24  **experience teaching for two and three years.   Do**

**Exhibit H**

Sullivan                    11/11/11

stressed the

1. Importance of proofreading.

2. Proofreading warm-up.

3. Read the essay (too much time spent on this).

4. Her presentation was for us (teachers), and not a demonstration of a lesson for students.

5. Weak presentation — her examples were less than stellar.



Willard Moody