IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>CITY COLLEGES OF CHICAGO d/b/a HAROLD WASHINGTON COLLEGE,<br><br>Defendant. | Case No. 14-cv-05864<br><br>Judge Sara L. Ellis<br>Magistrate Judge Susan Cox |

**DEFENDANT CITY COLLEGES OF CHICAGO'S
RESPONSE TO THE EEOC'S REQUEST FOR DISCOVERY SANCTIONS**

The issue here is whether Plaintiff is entitled to sanctions based on the failure of one of City Colleges faculty members to preserve certain handwritten notes when City Colleges took reasonable steps to gather the documents at issue, there is no evidence showing that the documents were disposed of for the purpose of hiding unfavorable information, and there is no evidence that the Plaintiff has been prejudiced in any way. Because Plaintiff has not made the showing required for sanctions, City Colleges respectfully requests that Plaintiff's motion be denied.

**A.    Background**

Plaintiff filed a one-count Complaint against City Colleges alleging a violation of the Age Discrimination in Employment Act ("ADEA") when City Colleges did not hire Nancy Sullivan for a full-time, tenure-track faculty position in its English Department at Harold Washington College. The crux of the lawsuit centers on the steps taken and decisions made by the seven-member Executive Committee of the English Department in the fall of 2011. As part of the hiring process, the Executive Committee interviewed certain selected applicants based on

their written submissions (*i.e.*, resumes, cover letters, letters of recommendation, etc.), and then the top applicants from those interviews were invited to return for a teaching demonstration. The Executive Committee then selected applicants to recommend to the administration. For Nancy Sullivan, the interview process ended after her teaching demonstration with the faculty committee; she was not one of the applicants referred to the administration.

The Charge of Discrimination that Nancy Sullivan filed with the EEOC is dated September 28, 2012, and City Colleges received notice of the charge shortly thereafter. *See* Exhibit C to Plaintiff's Joint Motion. As soon as October 19, 2012, one of City Colleges' attorneys, George Thomson ("Thomson"), made contact with officials at Harold Washington College regarding the charge.[1] Thomson communicated with the Dean of the Office of Instruction, Armen Sarrafian ("Sarrafian"), by telephone and through multiple emails dated October 22-23, 2012, to gather information related to the allegations in the charge. Brandon Pendleton ("Pendleton") and Eugene Nichols ("Nichols"), both employees in human resources, were included in some of the email communications. Based on Thomson's requests, from October 20-25, 2012, Sarrafian communicated with the then-Chair of the English Department, Larnell Dunkley ("Dunkley"), and, to the extent Dunkley did not have the requested information or needed additional information, he communicated with the other faculty members who were involved in the fall 2011 hiring process.

Between December 2012 and February 2013, there were multiple additional communications regarding information needed among Thomson, Sarrafian, Pendleton and

---

[1] The content of the communications generally described in this section is protected by the attorney-client privilege. *See Sandra T.E. v. South Berwyn Sch. Dist. 100,* 600 F.3d 612, 619-620 (7th Cir. 2010) (attorney-client privilege protects communications made in the course of an attorney's factual investigation when that investigation is made in order to provide legal advice). If the Court would like to review these privileged communications, *in camera*, City Colleges will provide the Court with copies of the written communications.

2

Dunkley, and, specific to the faculty member Willard Moody's ("Moody") notes, there were written communications between Moody and Dunkley regarding the gathering of the documents in Moody's possession (including notes) on at least December 20-21, 2012. However, the only notes Moody turned over to Dunkley for copying were the notes related to Nancy Sullivan. Those notes, and all other relevant documents found and turned over to City Colleges' Legal Department, were retained by the Legal Department and have been produced to the EEOC. The other interview notes remained preserved in a cardboard box in Moody's office, along with notes from every interview he had participated in since 2000. Moody Dep. pp.21, 28-29, 93, attached as Ex. 2.

On January 13, 2016, at his deposition in this case, Moody testified that in January of 2015, two years after producing documents relating to Sullivan's EEOC Charge, he received an email from Sarrafian regarding the fact that the amount of paper stored in his office presented a hazard and that he needed to find alternative ways to store the information, such as off-site storage or capturing the information contained in the papers in a digitized or spreadsheet format, so that he could then discard the paper copies. *See* January 7, 2015, memo attached at Exhibit 1. (Counsel has viewed Moody's office after the "cleanup" and can only imagine its prior condition.) As a result of this memo, without telling anyone of his intentions or asking whether the interview notes should still be maintained as they had been, Moody shredded his interview notes. *See* Ex.2 p. 44, 93-96. As a result, the notes now available are those which he had produced previously, in response to Thomson's requests to Dunkley.

### B. The Standard Regarding Sanctions for Spoliation

The Federal Rules of Civil Procedure and the Court's inherent powers give the Court the authority to sanction a party for the failure to preserve documents. *Jones v. Bremen High Sch. Dist. 228*, Case No. 08 C 3548, 2010 WL 2106640, *5 (N.D. Ill. May 25, 2010). To find that

3

sanctions for spoliation are appropriate, the Court must find each of the following: (1) that there was a duty to preserve the specific documents and/or evidence; (2) that the duty was breached; (3) that the other party was harmed by the breach; and (4) that the breach was caused by the breaching party's willfulness, bad faith, or fault. *Id.* "If the Court finds that sanctions are appropriate, it must determine whether the proposed sanctions can ameliorate the prejudice that arose from the breach; if a lesser sanction can accomplish the same goal, the Court must award the lesser sanction." *Id.*; *see also Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir. 2009) (any sanctions rendered must be proportionate to the offending conduct).

### C. City Colleges Did Not Breach Its Duty to Preserve

In this case, the parties agree that the duty to preserve arose when City Colleges received notice of the charge after September 28, 2012. Thus, the initial question for the Court to decide is whether City Colleges breached that duty. "Reasonableness is the key to determining whether or not a party breached its duty to preserve evidence" and "parties must take positive action to preserve material evidence." *Id.* at *6.

Here, City Colleges acted both reasonably and took affirmative steps to preserve relevant information. These steps began in October 2012, almost immediately after City Colleges received notice of the charge. Specifically, counsel from City Colleges, Thomson, repeatedly communicated with officials from Harold Washington College over the course of several months to ensure that all relevant information had been collected or was being maintained. Thomson did not merely leave the document collecting up to the interested employees at Harold Washington College.

### D. Plaintiff Has Not Been Harmed

To the extent there was an arguable breach of City Colleges duty to preserve, Plaintiff has not been harmed by the loss of those notes. Three members of the faculty committee observed

4

Sullivan's teaching demonstration in the fall of 2011, and reported their observations to the rest of the seven-member committee, whereupon the majority of the committee decided not to recommend Sullivan to the administration, a decision to which Moody acquiesced even though Moody had written a letter of recommendation for Sullivan. Ex. 2 pp.75-76. Thus, the key meetings were not the teaching demonstrations but rather, the report to the remainder of the committee, and Moody testified that he did not take notes at those meetings. Ex. 2 p.24. Since there were no notes concerning the committee's discussion of the candidates after the teaching demonstrations, notes from the teaching demonstrations themselves were, at best, tangential. Accordingly, the EEOC has not been prejudiced at all.

Second, the only reason proffered by the EEOC for the notes would be to compare Plaintiff's teaching demonstration to the teaching demonstrations of Chris Thomas and Maria Ortiz (*see* Plaintiff's Motion at p. 3); however, Moody's notes are not essential to making that comparison. Dunkley articulated his observations and comparisons among the three candidates, without the need for his recollection to be refreshed. *See* Excerpts from Dunkley's deposition, pp. 249-261, attached at Exhibit 3. Dunkley was also able to share the impressions expressed by the other faculty members present during the teaching demonstrations, and details about their discussions of the candidates. In addition, Moody's notes on Sullivan's teaching demonstration (*see* Exhibit H to Plaintiff's Motion) were consistent with Dunkley's recollections. *See EEOC v. Office Concepts, Inc.*, Case No. 1:14-cv-00290-RL-SLC, 2015 WL 9308268, *8 (N.D. Ind. Dec. 22, 2015) (EEOC is not prejudiced by destruction of evidence when alternative avenues for obtaining the information exist). Moreover, Moody did not recall being present for Ortiz' teaching demonstration, so no such comparison could be made from any of his notes. Ex. 2 pp.69, 100-101.

Further, Plaintiff is wrong when it argues that Moody's notes could be used to "question Moody about any assertion that he made that Sullivan's presentation was lacking in comparison with the other candidates." *See* Plaintiff's Motion at p. 3. In fact, at Moody's deposition, he testified that he did not think he compared Thomas and Sullivan, and, when asked if he compared Maria Ortiz to Nancy Sullivan, he answered, "no." Ex. 2 p.106.

Moreover, Plaintiff argues that another faculty member's notes, Maria's Estrada's, may have been lost when Moody shredded the notes (Plaintiff's Motion at pp. 3-4), but that argument ignores the fact that Estrada did not attend Sullivan's fall 2011 teaching demonstration, so any notes she would have provided Moody to keep for a prior hiring sequence is of no consequence since the fall 2011 hiring process is the only one at issue in this case.

### E. There is No Evidence of Willfulness, Bad Faith or Fault

The crucial element for determining whether sanctions are appropriate is not that evidence was destroyed, but rather, the reason for the destruction. *Office Concepts*, 2015 WL 9308268 at *8. "[T]here must be a level of fault to warrant sanctions," and "a court may *only* grant an adverse inference sanction upon a showing of bad faith." *Jones*, 2010 WL 2106640 at *6 (emphasis added). "Bad faith requires the intent to hide unfavorable information." *Id.* "Fault is defined not by the party's intent, but by the reasonableness of the party's conduct," which "may include gross negligence," but "mere negligence is not enough for a factfinder to draw a negative inference based on document destruction." *Id.*

The Court should not find any level of fault by City Colleges. As discussed above, counsel for City Colleges worked with officials at Harold Washington College to gather relevant information immediately upon receipt of the Charge. Further, there is no evidence of any intent by Moody or anyone else to withhold unfavorable information; to the contrary, Moody had already produced all of the documents he had concerning Sullivan. In hindsight, there is no

6

question but that he should also have produced all of the documents in his possession concerning all of the applicants in that same decisional process, but the fact that he did not do so suggests only a lack of experience concerning discrimination claims. It does not suggest the level of fault necessary to impose sanctions against the College based upon Moody's actions.

Quite simply, Moody was acting at the request of the Dean to clear paper out of his office due to safety concerns, he was not instructed to shred any documentation without the information being preserved in some other way first, and he did not tell anyone that he was destroying his notes from the interview process. Moreover, the fact that this occurred two years after he had been asked to provide copies of those documents belies any suggestion that they were destroyed to prevent their use in this case, and, it was not unreasonable for Moody to believe that, two years later, the documents were no longer relevant. Certainly, if Prof. Moody asked or notified someone of his intentions, he would have been reminded of his preservation obligations and he could have turned the notes over to someone else to maintain, but not doing that does not suggest that Prof. Moody engaged in misconduct, and certainly not misconduct that should be attributed to City Colleges. Instead, this is a case where City Colleges acted based on a safety concern, and its faculty members responded to the request to clean his office without recognizing the potential impact that his actions would have on the case. No fault can be found here, and certainly no willfulness or bad faith. *See Viramontes v. U.S. Bancorp*, No. 10 C 761, 2011 WL 291077 *5 (N.D. Ill. Jan. 27, 2011) (employer had not acted in bad faith when the evidence at issue was destroyed in "a routine manner pursuant to a neutral policy"); *Diersen v. Walker*, No. 00 C 2437, 2003 WL 21317276 *7 (N.D. Ill. June 6, 2003) (no spoliation because the destruction was done in the ordinary course of business, and there was no indication that the documents were selectively destroyed or that a violation of the document retention policy occurred).

Further, each of the cases cited by the EEOC in support of a finding of bad faith are distinguishable, not on point or actually support City Colleges. In *Weitzman v. Maywood*, No. 13 C 1228, 2014 WL 4269074 (N.D. Ill. Aug. 29, 2014), unlike here, the defendant failed to take action to suspend its automatic destruction policies resulting in the destruction of Board recordings critical to the decision at issue in the case. Similarly, the conduct at issue here is nowhere near the circumstances involved in *Rosenthal Collins Group, LLC v. Trading Technologies Int'l, Inc.*, No. 05 C 4088, 2011 WL 722467 (N.D. Ill. Feb. 23, 2011), where the case was dismissed upon the second sanctions motion after the court found evidence that plaintiff and its counsel had deceived the parties and the court with false and misleading information and intentionally destroyed relevant evidence after the court had ordered that the evidence be turned over.

The final case cited by Plaintiff related to bad faith, *Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422 (7th Cir. 2010), actually supports City Colleges' position. Just as here, in *Norman-Nunnery*, the plaintiff offered no evidence that the defendants lost or destroyed documents for the purpose of hiding adverse information. *Id.* at 429. Further, the court found that since the scoring sheets that were produced did not support the plaintiff's claims, "it is highly unlikely" that the missing scoring sheet contained information adverse to the defendants. *Id.* at 430. Here, too, given the accounts of Dunkley, Meresman and Moody, it is highly speculative and unlikely that anything set forth in Moody's missing notes would have supported Plaintiff's claims.

Plaintiff's cases under the "fault" standard fare no better. *Marrocco v. General Motors Corporation*, 966 F.2d 220 (7th Cir. 1992), is readily distinguishable in that it involves two consolidated products liability cases where the key "products" at issue that had been the subject

of protective orders were destroyed or lost in the shipping process, and counsel sought to withhold the information from the opposing party or delay to the point that recovery of the lost items was impossible. Similarly, *Langley v. Union Electric Co.*, 107 F.3d 510 (7th Cir. 1997), involved a negligence action based on an unventilated furnace that caused two deaths, and the furnace – the key piece of information – could not be produced for inspection. The case of *Northington v. H & M Int'l*, No. 00-cv-6297, 2011 WL 663055 (N.D. Ill. Jan. 12, 2011), is also distinguishable because, unlike here, there was no notice to the information technology department to preserve information, no follow up to ensure that the ESI had in fact been preserved, and there was an EEOC consent decree already in place that had required defendant to preserve the specific electronic information that was lost. *National Association of Radiation Survivors v. Turnage*, 115 F.R.D. 543 (N.D. Cal. 1987), and *Cohn v. Taco Bell Corporation*, No. 92 C 5852, 1995 WL 519968 (N.D. Ill. Aug. 30, 1995), are similarly inapplicable given the large volume of information lost in both cases and the claim that particular employees had not been put on notice. As discussed above, City Colleges took steps to ensure that Moody was aware of the litigation by December of 2012, shortly after the charge was filed.

F. **Plaintiff's Request for Additional Discovery Should Be Denied**

As an alternative to sanctions, even if Plaintiff's Motion is denied, Plaintiff seeks additional discovery by way of the production of litigation holds, depositions of all of the counsel responsible for gathering relevant information, and reopening the depositions of all of the decision makers. Plaintiff, however, has offered no factual justification or case law to support the notion that it should be entitled to attorney-client privileged communications and/or attorney work product. Further, Plaintiff has already deposed all of the decision makers (except Prof. Liston, whose deposition has been tentatively rescheduled to February 24) and Plaintiff was provided a full and fair opportunity during those depositions, which it fully explored, to question

9

the witnesses on their taking of notes, preservation of notes, recollections of the events at issue, and whether any additional documents could be useful to further refreshing their recollections. Plaintiff has offered no basis to get a second bite at the apple to re-explore these same issues.

### G. Moody's Actions Do Not Amount to a Finding of Pretext Against City Colleges

Although the question of what evidence exists of pretext is not at issue in this motion, Plaintiff does argue that Moody's actions of shredding his notes related to the teaching demonstrations should amount to evidence of pretext. In doing so, Plaintiff relies upon *Talavera v. Shah*, 638 F.3d 303 (D.C. 2011). *Talavera*, however, is inapposite. Specifically, in *Talavera*, unlike here, the individual who destroyed the notes did so in violation of a written regulation requiring him to preserve the notes for a period of two years. Moody, on the other hand, was acting upon a neutral request to clean his office based on safety concerns. Thus, *Talavera* has no applicability.

### H. Conclusion

For all of the reasons set forth above, Plaintiff's Motion for Sanctions should be denied.

Dated: February 16, 2016                    CITY COLLEGES OF CHICAGO d/b/a
                                            HAROLD WASHINGTON COLLEGE


                                            By:   /s Jeffrey S. Fowler
                                                    One of the Attorneys for Defendant

Joseph M. Gagliardo (00901989)
Jeffrey S. Fowler (06205689)
Heather Becker (06280584)
Laner Muchin, Ltd.
515 North State Street, Suite 2800
Chicago, Illinois 60654
(312) 467-9800
(312) 467-9479 (fax)

# **CERTIFICATE OF SERVICE**

Jeffrey S. Fowler, an attorney, hereby certifies that he caused the Response in the above-captioned matter to be served on the party of record listed below, by placing same in the U.S. mail located at 515 North State Street, Suite 2800, Chicago, Illinois 60654, postage prepaid, before the hour of 5:00 p.m. on this 16th day of February, 2015, addressed to:

>Laurie S. Elkin
>Brandi Davis
>Deborah Hamilton
>U.S. Equal Employment Opportunity Commission
>500 W. Madison Street, Ste. 2800
>Chicago, IL 60661

>/s Jeffrey S. Fowler
>Jeffrey S. Fowler